1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ENRIQUE DIAZ, | CASE NO. 1:12-cv-01296-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM AND ON GROUNDS THAT IT DUPLICATES *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC |
| v. | |
| R. DIAZ, et al., | |
| Defendants. | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF BE DENIED |
| _____/ | (Doc. 3) |

## I.    Procedural History

Miguel Enrique Diaz ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis, in this civil rights action pursuant to 42 U.S.C. § 1983.  On August 9, 2012, Plaintiff filed a motion for emergency injunction without ever filing a complaint.  Doc. 1; Doc. 3.  The Court will treat Plaintiff's motion as a motion for preliminary injunction and also as a complaint.  Doc. 3.

## II.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

1    dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

2    claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3         A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

4    which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

5    support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467

6    U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v.*

7    *United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898

8    (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the

9    allegations of the complaint in question, and construe the pleading in the light most favorable to the

10   plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22

11   (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

12   **III.   Plaintiff's Complaint**

13        Plaintiff is currently a state prisoner at the California Substance Abuse Treatment Facility

14   (CSATF) in Corcoran, California. The events central to Plaintiff's complaint occurred while he was

15   at prisoner at CSATF. Doc. 1; Doc. 3. In the complaint, Plaintiff names the following as

16   defendants: 1) R. Diaz (Warden at CSATF); 2) J. Reynoso (Associate Warden at CSATF); 3) R.

17   Garcia (CC II at CSATF); 4) Vasquez (Captain at CSATF); 5) R. Morales (Lieutenant at CSATF);

18   6) Heck Agpa (C.M. at CSATF); 7) Gallagher (at CSATF); 8) Popper (Sergeant at CSATF); 9) J.

19   J. Lopez (Sergeant at CSATF); 10) Enenomoh (CMO at CSATF); 11) Ding (Doctor at CSATF); 12)

20   Martinez (RN at CSATF); 13) Whiting (LVN at CSATF); 14) Lozano (Correctional Officer at

21   CSATF); 15) Correctional Officer Pilgrim; 16) Hall (Appeals Coordinator); 17) Jasso (OTA); and

22   18) Does 1-10. Doc. 1; Doc. 3 at 1. Plaintiff seeks compensatory, punitive, declaratory and

23   injunctive relief. Doc. 3 at 3.

24        Plaintiff alleges that on April 30, 2012, Plaintiff went to his job in vocational plumbing and

25   Defendant Lozano ordered Plaintiff to return to his dorm stated that Plaintiff would never wear his

26

27

28

1  personal soft shoes while he worked there even with a "Chrono"[1] and that Defendant Lozano did not

2  care what the chrono stated.  Doc. 3 at 1.  Plaintiff explained that due to his ruptured Achilles

3  tendon, Plaintiff is unable to wear state issued footwear because such footwear causes bleeding,

4  further scare tissue and increased loss in motion range.  Doc. 3 at 1-2.  Defendant Lozano responded,

5  "That's your problem."  Doc. 3 at 2.  Plaintiff then stated that it was an Americans with Disabilities

6  Act (ADA) issue at his previous prison and the soft shoes were allowed as a reasonable

7  accommodation.  Doc. 3 at 2.  According to Plaintiff, Defendant Lozano replied that he did not care

8  and that it was Plaintiff's problem.  Doc. 3 at 2.  According to Plaintiff, Defendant Lozano never

9  mention that the denial of soft shoes were for security or safety reasons, rather that it was Defendant

10  Lozano's personal pet peeve and that it was his policy and no one could change it.  Doc. 3 at 2.

11  Plaintiff alleges that Defendant Lozano stated that he did not allow ADA reasonable

12  accommodations that he did not like and it was his program and Plaintiff was not going to change

13  it.  Doc. 3 at 2.

14       On May 25, 2012, Plaintiff received a disciplinary charge for refusing to report to work on

15  May 21, 2012, however, on May 21, 2012, Plaintiff was in the emergency room due to chest pain

16  and Achilles tendon pain.  Doc. 3 at 2.  During the hearing, Lieutenant Andres found Plaintiff not

17  guilty because an LVN stated that Plaintiff's chrono was a reasonable accommodation and was valid

18  and transferable due to the *Plata* consent decree guidelines.  Doc. 3 at 2.

19       Plaintiff did not return to work until June 12, 2012, when he was given a temporary

20  accommodation chrono.  Doc. 3 at 2.  Although Plaintiff was given a temporary chrono, Plaintiff

21  asserts that he requires a permanent chrono in order to prevent more injury and loss of range of

22  motion.  Doc. 3 at 2.  Plaintiff states that he has been to buy $515.92 boots provided by contractor

23  called "Sunrise."  Doc. 3 at 2.  However, Plaintiff complains that "the Asian employees medical

24  opinion [gave] a '50-50' chance of [the boots] working for [Plaintiff's] medical condition."  Doc. 2

---

[1] Plaintiff does not define the meaning of "chrono."  A medical "chrono" is a recommendation, usually related to an inmate's medical condition or course of treatment, issued by a prison physician.  *See e.g.*, Cal. Code Regs. tit. 15, § 3043.5(d) (describing the medical chrono also known as "Form 128-C"); *see generally* Cal. Code Regs. tit. 15, § 3000 (defining "general chrono" written on CDC Form 128-B "which is used to document information about inmates and inmate behavior").

at 3.  Plaintiff emphasizes that "the Asian" never asked about Plaintiff's medical condition or physically examined Plaintiff to even support the "50-50" determination.  Doc. 3 at 2-3.  Plaintiff was unwilling to pay $575.92 dollars for the boots supplied by the prison-approved vendor.  Doc. 3 at 3.  Plaintiff asserts that it is unconstitutional to force him to pay $575.92 for prison-approved shoes when the vendor states that the shoes have a fifty percent chance of working, and such a predicament justifies an emergency injunction mandating that Plaintiff be allowed to wear personal tennis shoes in perpetuity.  Doc. 3 at 3.

According to Plaintiff, based upon the *Plata* plan and federal receivership, all chronos must be accepted at all other prisons, while CSATF's policy is to re-evaluate all transferred prisoners and rescind chronos that they disagree with.  Doc. 3 at 5.  After Defendant Doctor Ding performed a three-minute medical evaluation on Plaintiff's shoulders and knees that were previously operated on, CSATF rescinded Plaintiff's chrono for a cane and "lower mobility vest."  Doc. 3 at 5, 17.  Plaintiff alleges that Sergeant Beltran and Defendant Morales told Plaintiff to get his chrono changed because custody staff do not accept chronos from other prisons.  Doc. 3 at 5.  Plaintiff alleges that this policy violates his ADA rights.  Doc. 3 at 5.  Plaintiff also alleges that Defendants Martinez (Nurse) and Whiting (LVN) maliciously re-screened Plaintiff for eligibility for disability chronos and with malice, determined that he did not need the same accommodation chronos that he had received at a different prison.  Doc. 3 at 18.  Plaintiff also alleges that Defendant Agpa violated Plaintiff's rights by telling Defendant Gallagher and other prison staff that Plaintiff's former medical chrono from another prison was no longer valid.  Doc. 3 at 18.  Plaintiff states that Defendants Lozano and Pilgrim conspired to not recognize his medical chrono from another prison.  Doc. 3 at 18.  Plaintiff argues that these circumstances amount to deliberate indifference and cruel and inhumane treatment.  Doc. 3 at 5, 19.

The Court takes judicial notice of Plaintiff's duplicate claims in *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC and the exhibits attached in both *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC

and in this current action.[2]   According to Plaintiff's exhibits, Plaintiff's full-time work in the

plumbing unit began Thursday April 26, 2012. *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc.

2 at 19) (report printed April 30, 2012).   Plaintiff does not clarify whether he reported to work prior

to the April 30, 2012, confrontation with Defendant Lozano.   Nor does Plaintiff clarify what

transpired regarding his shoes if and when he reported to work previously.   In Plaintiff's attached

declaration, Plaintiff states that Defendant Vasquez authored a memorandum that did not allow for

any ADA reasonable accommodation.   Doc. 3 at 16.   Plaintiff also attached a grievance dated April

30, 2012, which states "the memo of 3/28/12 makes now allowance for any reasonable

accommodation this violates the ADA and Armstrong Remedial Plan."   Doc. 3 at 21.   In Plaintiff's

duplicate action, *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC, Plaintiff attaches an exhibit which is

a memorandum dated March 28, 2012, and signed by Defendant Vasquez and Sergeant Beltran

which states:

> This memorandum is to inform the Facility "B" General Population in regards to state issued clothing. State issued clothing will not be required to be worn when inside the Housing Units or Recreational Yard. As of Wednesday, March 28, 2012, state issued clothing along with state issued boots or state issued shoes must be worn when an inmate is entering the following areas listed below:
> Dining Hall
> Vocations
> Work Change
> Program Office
> Medical Clinic
> Law Library
> Chapel
> Education Department
> Visiting
> If an inmate is not in compliance with the above written locations, they will forfeit their opportunity to enter the desired destination without further discussion. Disciplinary action will be taken by facility staff if the aforementioned is not complied with.

*Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2 at 18) (Memorandum dated March 28, 2012).

---

[2] *See Biltmore Associates, LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n. 1 (9th Cir. 2009) ("A court may consider documents . . . that are incorporated by reference into the complaint."); *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000) ("In determining whether a plaintiff can prove facts in support of his or her claim that would entitle him or her to relief, we may consider facts contained in documents attached to the complaint."); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

**IV.   Applicable Law and Analysis**

    **A.   Duplicate Action**

It appears that this action is proceeding on duplicate claims and duplicate defendants brought in another case, *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC.  According to the Ninth Circuit:

> To ascertain whether successive causes of action are the same, we use the transaction test, developed in the context of claim preclusion. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."

*Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992)).  In applying the transaction test, we examine four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982)).  'The last of these criteria is the most important.' *Id.* at 689.

In *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC, Plaintiff's claim is based on Defendant Lozano denying Plaintiff the ability to work while wearing his personal tennis shoes on April 30, 2012, and failure to recognize a personal shoe chrono from a previous prison.  *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2).  Plaintiff's allegations continues as follows:

> Officer Lozano called Lieutenant J. Gallagher who told Plaintiff that all state issued shoes are soft shoes.  Gallagher stated that he spoke to C. M. Heck Agpa who stated that Plaintiff's "chrono" was invalid.  Plaintiff asserts that his chrono specifically states that "state issued shoes cause further tendon injury and bleeding in this inmate."  Plaintiff argues that the denial of any reasonable accommodation in the memorandum issued on March 28, 2012, by Captain Vasquez and signed by Lieutenant Morales violated the ADA and constitutes cruel and unusual punishment. Plaintiff alleges that he is a diabetic with lower mobility impairments and is insulin dependant.  Plaintiff argues that he is being subjected to malicious cruelty and intentional reckless disregard of his ADA rights and is suffering from the wilful infliction of pain and suffering by violating his chrono.  Plaintiff states that his tendon injury is documented by the Chief Medical Officer at CSP Solano where he was formerly housed and Associate Warden Shirley at CSP Solano granted his ADA appeal.

*Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 17 at 2-3) (internal footnote and citations

omitted).   Plaintiff's current action in substantivally similar to *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC . *Compare Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2) *with Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC (Doc. 3).  In both actions, Plaintiff alleges that various prison staff have violated his rights under the ADA and were deliberately indifferent to a serious medical need stemming from following a policy to not honor medical chronos issued from other prisons and denying him the ability to work in his personal shoes on April 30, 2012.  *Compare Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2) *with Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC (Doc. 3).

Both actions involve overlapping and different prison officials at CSATF.  *Compare Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2) *with Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC (Doc. 3).  All of the prison staff named in *Diaz v. Vasquez, et al.*, (Lozano, C. M. Heck Agpa, Vasquez and Morales) are defendants in *Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC.  In this action, in addition to the overlapping defendants, Plaintiff adds: 1) R. Diaz (Warden at CSATF); 2) J. Reynoso (Associate Warden at CSATF); 3) R. Garcia (CC II at CSATF); 4) Gallagher (at CSATF); 5) Popper (Sergeant at CSATF); 6) J. J. Lopez (Sergeant at CSATF); 7) Enenomoh (CMO at CSATF); 8) Ding (Doctor at CSATF); 9) Martinez (RN at CSATF); 10) Whiting (LVN at CSATF); 11) Correctional Officer Pilgrim; 12) Hall (Appeals Coordinator); and 13) Jasso.  *Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC (Doc. 1; Doc. 3 at 1).  The defendants in both actions are in privity with each other as employees of CSATF.  *See Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir. 2003); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940); *see also Adams v. California Dept. of Health Services*, 487 F.3d 684, 691 (9th Cir. 2007).

The Court finds that the claims and the defendants in this case duplicate the claims and defendants in *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC.

**B.    Class Action Membership**

Assuming Plaintiff is correct that Plaintiff states an ADA and medical claim, he would be a class member in three pending class actions of which the Court takes judicial notice: *Plata v. Schwarzenegger*, No. 3:01-cv-01351-TEH (N.D. Cal. filed 2001), *Armstrong v. Brown*, No. 3:94-cv-2307-CW (N.D. Cal. filed 1994), and *Coleman, et al. v. Schwarzenegger, et al.*, No. 2:90-cv-00520-LKK-JFM.  The three class actions involve the same subject matter of Plaintiff's allegations

regarding the adequacy of medical care and ADA claims.

The class in *Plata* includes all current and future California inmates requiring medical care under the medical care system operated by the CDCR. Plaintiffs claimed that the CDCR is providing constitutionally deficient medical care in violation of the Eighth Amendment, and that the current systems and resources cannot properly care for and treat the prisoners in custody. *See Webb v. Schwarzenegger*, No. 3:07-cv-2294-PJH, 2012 WL 163010 (N.D. Cal., Jan. 19, 2012) (summarizing applicable prisoner class actions). Similarly, the class in *Armstrong* includes all present and future California state prisoners and parolees under the care of the CDCR who are qualified individuals under the ADA and section 504 of the Rehabilitation Act, and who have been denied access to programs, services, and activities run by the CDCR and have been confined in or use facilities operated by and under the control of the CDCR. *See Webb v. Schwarzenegger*, No. 3:07-cv-2294-PJH, 2012 WL 163012 (N.D. Cal., Jan. 19, 2012). Plaintiff's ADA claims concern the accessibility of qualified prisoners to buildings, facilities and programs, including vocational, work, classification and disciplinary programs.

Having reviewed Plaintiff's allegations and attached exhibits in this action and in the duplicate action of *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 2), the Court concludes that Plaintiff's allegations seeking injunctive relief involves the very same claims being litigated in the above class actions. Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions should not be brought where there is a pending class action suit involving the same subject matter. *Crawford v. Bell*, 599 F.2d 890, 983 (9th Cir.1979) ("A court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result."); *accord McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir.1991); *Webb v. Schwarzenegger*, No. 3:07-cv-2294-PJH, 2012 WL 163012 (N.D. Cal., Jan. 19, 2012) (citing *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir.1988) (en banc)). Individual members of the class, like Plaintiff, "may assert any equitable or declaratory claims they have, but they must do so by urging further actions through the class representative and attorney, including contempt proceedings, or by intervention in the class action." *Webb v. Schwarzenegger*, No. 3:07-cv-2294-PJH, 2012 WL 163012 (N.D. Cal., Jan. 19, 2012) (quoting *Gillespie v. Crawford*, 858 F.2d

8

1101, 1103 (5th Cir.1988)).

The injunctive relief sought by Plaintiff can be granted only in the class actions. *Webb v. Schwarzenegger*, No. 3:07-cv-2294-PJH, 2012 WL 163012 (N.D. Cal., Jan. 19, 2012)(citing *Spears v. Johnson*, 859 F.2d 853, 855 (11th Cir.1988), vacated in part on other grounds, 876 F.2d 1485 (11th Cir.1989); *Gillespie*, 858 F.2d at 1102). Moreover, Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated any of the remedial plans.[3] To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong Remedial Plan, plaintiff "must pursue his request via the consent decree or through class counsel." *Crayton v. Terhune*, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002).

### C.    Eighth Amendment Deliberate Indifference to Serious Medical Need

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096 (citing *McGuckin* at 1060). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm

---

[3] The Court notes that given the timely manner in which Plaintiff received a temporary chrono, the remedial plans have not been violated. *See Martin v. Yates*, No. 1:08-CV-01401-CKJ, 2010 WL 5330485 at *6 n.6. (E.D. Cal. Dec. 20, 2010).

in order for the prisoner to make a claim of deliberate indifference to serious medical needs. *McGuckin* at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

### 1.   Analysis

Plaintiff fails to state a cognizable Eighth Amendment claim.  Plaintiff alleges that various individuals were indifferent by failing to allow him a permanent medical chrono for personal soft soled shoes and instead allowing Plaintiff to have a temporary chrono.  A difference of opinion over what constitutes proper treatment does not constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06 (emphasis added); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1984).  Moreover, the Constitution does not require that prison doctors give inmates every medical treatment they desire. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Additionally, Plaintiff argues that it violates the constitution to require Plaintiff to pay an approved vendor for Plaintiff's orthopedic shoes.  The Court takes judicial notice of section 3358 (b) and (c) of Title 15 of the California Code of Regulations which states, in part:

> No inmate shall be deprived of a prescribed orthopedic or prosthetic appliance . . . properly obtained while in the department's custody unless a department physician . . . determines the appliance is no longer needed and the inmate's personal physician, if any, concurs in that opinion.
>
> ***
>
> (c) Purchase of Appliance. Prescribed appliances shall be provided at state expense if an inmate is indigent, otherwise the inmate shall purchase prescribed appliances through the department or an approved vendor as directed by the chief medical officer . . . .

15 CCR § 3358.  It appears that Plaintiff is challenging this regulation, however, Plaintiff never alleges that he his indigent or that he informed any of the Defendants that he was indigent as required under 15 CCR § 3358(c).[4]  Given that Plaintiff has a temporary chrono to meet his medical needs, the fact that Defendants may require Plaintiff to pay for orthopedic shoes in the future fails to state a deliberate indifference claim.

---

[4] The Court notes that Plaintiff is proceeding in forma pauperis in this action and as submitted a trust account statement (Doc. 2; Doc. 5).

Finally, Plaintiff argues that Defendants should not employ a policy where accommodation chronos are not automatically honored when inmates transfer into CSATF.  The Court notes that on the medical chronos that Plaintiff attaches as exhibits, there is a signature of a medical professional and a signature of the correctional captain of the facility.  Doc. 3 at 25.  According to Section 3043.5(d)(1) of Title 15 of California's Code of Regulations:

> When an inmate has a disability that limits his/her ability to participate in a work, academic, vocational or other such program, medical/psychiatric staff shall document the nature, severity, and expected duration of the inmate's limitations on a CDC Form 128-C (Rev. 1/96), Chrono-Medical . . . .  The medical/psychiatric staff shall not make program assignment recommendations or decisions on the form. The CDC Form 128-C shall then be forwarded to the inmate's assigned correctional counselor who will schedule the inmate for a classification committee review. The classification committee shall have the sole responsibility for making program assignment and work group status decisions. . . .

15 CCR 3043.5(d)(1).  Additionally, according to section 54030.11 of CDCR's Department Operations Manual (DOM):

> Approval for an inmate to permanently or temporarily possess or retain a health care appliance requires a clinical prescription for the appliance and shall be documented on a CDC Form 128C Medical . . . Chrono. Inmates shall be allowed to retain possession of a prescribed health care appliance until a health care evaluation is performed providing that safety and security of the institution/facility will not be compromised. . . . Approved health care appliances include . . . but are not limited to . . . Orthopedic braces or shoes.

CDCR DOM § 54030.11.  Although Plaintiff does not direct the Court to a written policy regarding CSATF not honoring medical accommodation chronos derived from other prisons for inmates, the above regulations and guidelines demonstrate that the process obtain a medical chrono for orthopedic shoes is a process which requires evaluating the security concerns of a prison.  *See* 15 CCR 3043.5(d)(1); CDCR DOM § 54030.11.  A policy to review accommodation chronos from incoming inmates is reasonable to ensure that such chronos are compatible with the receiving prison's different security concerns and such a requirement ensures that he new correctional staff are on notice of the accommodation.  *See* 15 CCR 3043.5(d)(1); CDCR DOM § 54030.11.  Given that Plaintiff was re-evaluated in a timely fashion by medical staff and once Defendants were on notice of his medical concerns, Plaintiff was provided with a temporary chrono, Plaintiff fails to state a deliberate indifference claim.

///

### D.      Americans with Disabilities Act

Plaintiff mentions the Americans with Disabilities Act, which "prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1)[he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052. The treatment, or lack of treatment, concerning a medical condition does not provide a basis upon which to impose liability under the ADA. *Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir.2005) (medical treatment decisions not a basis for RA or ADA claims); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir.2005) (RA not intended to apply to medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir.2005) (medical decisions not ordinarily within scope of ADA or RA); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("The ADA does not create a remedy for medical malpractice."). Further, Plaintiff may name the appropriate entity or state officials in their official capacities, but he may not name individual prison employees in their personal capacities; individual liability is precluded under the ADA. *Shaughnessy v. Hawaii*, No. 09-00569 JMS/BMK, 2010 WL 2573355, at *8 (D. Hawai'i June 24, 2010); *Anaya v. Campbell*, No. CIV S-07-0029 GEB GGH P, 2009 WL 3763798, at *5-6 (E.D.Cal. Nov.9, 2009); *Roundtree v. Adams*, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec.1, 2005).

Given that Plaintiff was provided a temporary chrono to accommodate his needs, Plaintiff has not shown that  he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities and thus fails to state a claim under the ADA. *Lovell*, 303 F.3d at 1052. Additionally, a requirement to pay for orthopedic shoes in the future fails to state a current ADA claim.

### E.      Linkage

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. *Iqbal*, 129 S. Ct. at 1948-49; *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010); *Ewing*, 588 F.3d at 1235; *Jones v. Williams*, 297 F.3d at 934.  Liability may not be

imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 129 S. Ct. at 1948-49; *Ewing*, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr*, 652 F.3d 1202, 1205-08 (9th Cir. 2011); *Corales*, 567 F.3d at 570; *Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).   Some culpable action or inaction must be attributable to defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation. *Starr*, 652 F.3d at 1205; *Jeffers v. Gomez*, 267 F.3d 895, 914-15 (9th Cir. 2001); *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

### 1.    Analysis

Although Plaintiff names over eighteen defendants (Doc. 1; Doc. 3 at 1), Plaintiff only describes the actions of Defendants Lozano and Morales in the motion.   Plaintiff attaches a declaration which makes conclusory assertions that Defendants Diaz, Vasques, Garcia,  Reynoso, Morales, Popper, Gallagher, Andres, Lopez, Beltran and Enenomoh, are liable by virtue of their positions  and knowledge of policy (Doc. 3 at 16-17), however, such is insufficient to demonstrate when and how they subjectively knew that Plaintiff had a serious medical need.

### F.    Rule 3 and Rule 8 of the Federal Rules of Civil Proceedure

A plaintiff must file a complaint with the court in order to bring an action. Fed. R. Civ. P. 3. Additionally, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).   Facial plausibility demands more than the mere possibility that a defendant committed misconduct, *Iqbal* at 1950, and while factual allegations are accepted as true,

legal conclusions are not, *id.* at 1949.

1.    **Analysis**

Plaintiff has exhibited an abusive litigation pattern, where Plaintiff files a civil complaint cover form and a motion for emergency injunctive relief and refers to such motion as his complaint. *Compare Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC (Doc. 1; Doc. 2) *with Diaz v. Diaz, et al.*, 1:12-cv-01296-GBC (Doc. 1; Doc. 3) *with Diaz v. Swarthout*, 2:12-cv-0727-EFB at Doc. 11, 2012 WL 3862633 *and with Diaz v. McCue, et al.*, 2:11-cv-02274-EFB (Doc. 1; Doc. 2).   Although the Court has construed Plaintiff's motion for emergency injunction as a complaint, Plaintiff's action is deficient and fails to comply with Rule 3.   *See* Fed. R. Civ. P. 3.   The court in *Diaz v. Swarthout*, 2:12-cv-0727-EFB at Doc. 11, 2012 WL 3862633, has already informed Plaintiff that filing an emergency injunctive order is insufficient stating:

> On April 11, 2012, the court informed plaintiff that to commence a civil action, he must file a complaint that contains a short and plain statement of his claim, showing that he is entitled to relief. Dckt. No. 2. Plaintiff responded by letter, stating that he was confused by the April 11, 2012 order because he had "already filed [his] complaint," and referred to the March 22, 2012 motion for injunctive relief. Dckt. No. 8. Plaintiff also filed a form complaint, in which he merely referred to the "Statement of the Case" section of his motion for injunctive relief.

*Diaz v. Swarthout*, 2:12-cv-0727-EFB at Doc. 11, 2012 WL 3862633.   It appears that Plaintiff's persistence in this practice is intentional and combined with the observation that he routinely fails to exhaust administrative remedies (see *Diaz v. McCue, et al.*, 2:11-cv-02274-EFB at doc. 8, 2012 WL 159581) such repeated litigation practice appears to be an attempt to speed up the litigation.

Moreover, Plaintiff's vague legal conclusions and piecemeal reiteration of the facts fail to comply with Rule 8(a).   Plaintiff bears the burden of separately setting forth his legal claims and for each claim, briefly and clearly providing the facts supporting the claim so that the Court and Defendants are readily able to understand the claims.   *Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000).

**G.    Exhaustion**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." 42 U.S.C. § 1997e(a).   Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).   The Court must dismiss a case without prejudice even when there is exhaustion while the suit is pending. *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005).

Exhaustion is required regardless of the relief sought by the prisoner. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).   A prisoner must "must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).   A prisoner's concession to non-exhaustion is valid grounds for dismissal so long as no exception to exhaustion applies.   42 U.S.C. § 1997e(a); *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation has an administrative grievance system for prisoner complaints.   Cal. Code Regs., tit. 15 § 3084.1 (2011).   The process is initiated by submitting a CDC Form 602. *Id.* at § 3084.2.   Three levels of appeal are involved, including the first formal level, second formal level, and third formal level, also known as the "Director's Level." *Id.* at § 3084.7.   Appeals must be submitted within thirty calendar days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. *Id.* at §§ 3084.8.

In order to satisfy section 1997e(a), California state prisoners are required to use the available process to exhaust their claims prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2383 (2006); *McKinney*, 311 F.3d at 1199-1201.   "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones*, 127 S.Ct. at 918-19 (citing *Porter*, 435 U.S. at 524).   "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739 n.5).

### 1.   Analysis

There is no exception to the exhaustion requirement for imminent harm. *Jones v. Sandy*, 2006 WL 355136 at *11 (E.D. Cal. Feb. 14, 2006).   Moreover, claims brought under the ADA does

not provide an exception to the exhaustion requirement. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059-60 (9th Cir. 2007).

Because it is clear from the face of Plaintiff's complaint that he has not yet exhausted, this action should also be dismissed on exhaustion grounds. 42 U.S.C. § 1997e(a); *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid grounds for dismissal . . . ."); *see also Diaz v. McCue, et al.*, 2:11-cv-02274-EFB at doc. 8, 2012 WL 159581.

## V.    Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008)(citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 374 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. *Id*. at 376 (citation omitted)(emphasis added). The Ninth Circuit has made clear that "[T]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.*"* *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950 (9th Cir. 2010), quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The moving party has the burden of proof on each element of the test. *Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). 'A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.' *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1985).

Plaintiff has not met his burden as the moving party. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in original). A mandatory preliminary injunction, such as that sought by plaintiff in the instant motion, "is subject to heightened scrutiny and should not be

issued unless the facts and the law clearly favor the moving party." *Dahl v. Hem Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). As the moving party, it is Plaintiff who bears the burden.

In the Court's above screening of Plaintiff's complaint, the Court concluded that Plaintiff failed to state a claim. Thus Plaintiff has failed to demonstrate a likelihood of success on the merits or raise serious questions going to the merits. Therefore, the Court, in its discretion, recommends denying Plaintiff's motion for a preliminary injunction.

**V.   Conclusions and Recommendation**

The Court finds that Plaintiff's complaint filed on August 9, 2012, fails to state any Section 1983 claims upon which relief may be granted against the named defendants. Moreover, the Court finds that this action duplicates *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted). However, in this action, given that Plaintiff's current action duplicates *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC such deficiencies are not capable of being cured by amendment and, therefore, leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, the Court HEREBY RECOMMENDS that:

1.     This action be DISMISSED in its entirety, WITHOUT PREJUDICE, for failure to state a claim and for being duplicative of *Diaz v. Vasquez, et al.*, 1:12-cv-00732-GBC; and

2.     That Plaintiff's motion for injunctive relief be denied.

///
///
///
///
///
///
///

17

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:      November 28, 2012

_____
UNITED STATES MAGISTRATE JUDGE